UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANGZHOU JINGYAO TECHNOLOGY CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>LUSTER LEAF PRODUCTS, INC.,<br><br>Defendant. | No. 26 CV 4926<br><br>Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Luster Leaf Products holds a patent on an electronic meter that measures the pH and moisture of soil. Hangzhou Jingyao Technology sold an electronic soil meter of its own on Amazon. In March 2026, Luster Leaf told Amazon that Jingyao's meter infringed its patent, and Amazon took the listing down. Jingyao responded with this lawsuit, seeking a declaration that its meter does not infringe the patent and that the patent is invalid. It now moves for a preliminary injunction that would order Luster Leaf to withdraw its complaint to Amazon and bar it from filing another while the case is pending. Luster Leaf answered the lawsuit with a counterclaim for patent infringement, which Jingyao moves to dismiss. For the reasons discussed below, the motions are denied.

## I. Legal Standards

"To obtain a preliminary injunction, a party must establish 'that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction

is in the public interest.'" *Socket Sols., LLC v. Imp. Glob., LLC*, 185 F.4th 1150, 1154 (Fed. Cir. 2026) (quoting *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016)) (cleaned up); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Richwine v. Matuszak*, 148 F.4th 942, 952 (7th Cir. 2025).[1] "[A]n applicant for preliminary relief bears a significant burden, even though the Court recognizes that, at such a preliminary stage, the applicant need not show that it definitely will win the case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020).

"[W]hen a preliminary injunction prevents a patentee from communicating its patent rights, a court applies 'federal patent law and precedent relating to the giving of notice of patent rights.'" *Myco Indus., Inc. v. BlephEx, LLC*, 955 F.3d 1, 10 (Fed. Cir. 2020) (quoting *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1373 (Fed. Cir. 2007)). "[F]ederal law requires a showing of bad faith in order to bar such communications," and "a bad faith standard cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless." *GP Indus.*, 500 F.3d at 1373–74 (citing *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 898 (Fed. Cir. 1998)).

To survive a motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When analyzing the sufficiency of a counterclaim, I construe it in the light most

[1] Regional circuit law applies to motions for a preliminary injunction, except for patent-specific issues, which are controlled by Federal Circuit law. *Socket Sols.*, 185 F.4th at 1153.

favorable to the counterclaimant, accepting all well-pleaded facts as true and drawing all reasonable inferences in its favor. *See Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026). My review of a motion to dismiss includes not only the counterclaim itself, but also documents attached to the filing, documents that are critical and referred to in it, and information that is subject to proper judicial notice. *See Muthana v. Mullin*, 171 F.4th 967, 973 (7th Cir. 2026) (quoting *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013)).

The counterclaim "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a [counterclaim] states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679; *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826–27 (7th Cir. 2015) (applying the same rules from *Twombly* and *Iqbal* to a motion to dismiss a counterclaim).

## II. Background

Gardeners use handheld meters to check the acidity and moisture level of soil. A metal probe pushed into the ground produces a small electrical signal, and the

meter translates that signal into a reading. [16-1] at 3:9–18.[2] For the reading to mean anything, the meter needs a reference point: it has to know what signal corresponds to neutral soil—a pH of 7.0—so that it can measure everything else against it. [16-1] at 4:23–36, 4:53–56. The process of setting that reference point is called calibration.

Luster Leaf owns U.S. Patent No. 8,938,361, which the Patent Office issued to it in January 2015. [1] ¶¶ 8, 13; [16] at 2 ¶¶ 8, 13. The patent describes a digital soil meter built from a sensor circuit, an analog-to-digital converter, a microcontroller, and a display, and it describes two ways to calibrate that meter. [16-1] at 1:33–41, 4:23–26. Under the "floating calibration method," the meter calibrates itself each time it is switched on: the microcontroller takes several initial readings while the probe is presumed to be in the air rather than the soil, averages them, and treats the average as neutral. [16-1] at 4:37–59. Under the "fixed calibration method," the reference is set once, by the manufacturer. [16-1] at 4:24–30. A calibration circuit sits between the sensor and the microcontroller, and a variable resistor in that circuit "may be adjusted at the factory to associate the zero reference of the measured soil characteristic (i.e., pH) with a fixed sensor output voltage close to the virtual ground." [16-1] at 8:36–54. The fixed method carries "the additional cost of an extra calibration circuit." [16-1] at 8:21–26.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except that citations to the patent, [16-1], are to its column and line numbers. The facts are taken from the complaint, [1], the answer and counterclaim, [16], and the parties' submissions on the motion for a preliminary injunction.

The patent has two independent claims. Claim 1, [16-1] at 9:49–67, covers a soil-measuring apparatus with a sensor circuit, an analog-to-digital converter, a display panel, and a microcontroller configured to:

> obtain a plurality of initial readings from the sensor circuit when the apparatus is powered on;
>
> obtain a nominal value by averaging the initial analog readings; and
>
> assign a zero reference associated with a neutral value of the soil characteristic to the nominal value derived by averaging the initial readings.

Claim 16, [16-1] at 10:64–11:10, covers an apparatus with the same basic components and, in place of the microcontroller steps:

> a calibration circuit adapted to set a zero reference associated with a neutral value of the soil characteristic to a fixed reference voltage from the sensor circuit by averaging initial analog readings to obtain the neutral value.

Claim 17, which depends on Claim 16, adds that "the calibration circuit includes a variable resistor, and the calibration circuit is connected between the sensor circuit and the microcontroller." [16-1] at 11:11–14.

The phrase "by averaging initial analog readings to obtain the neutral value" was not in Claim 16 as first filed. In March 2014, the patent examiner rejected Luster Leaf's claims as anticipated by an earlier soil-tester patent referred to by the parties as Bjornsson. [1] ¶ 23; [16] at 3 ¶ 23. Luster Leaf responded by amending its claims—adding that phrase to Claim 16 and the step "obtain a nominal value by averaging the initial analog readings" to Claim 1—and by telling the examiner that Bjornsson did not disclose averaging. [1] ¶¶ 24–28; [16] at 3–4 ¶¶ 24–28. The claims were then allowed. [1] ¶ 29.

Jingyao sold a meter on Amazon that measures soil pH, moisture, temperature, and light. [1] ¶¶ 7, 36. According to Jingyao, the meter is calibrated once, at the factory. [1] ¶ 37. A technician uses a screwdriver to adjust four small variable resistors on the circuit board—one of them "until pH reads 7.0"—and the resistors then stay where they were set. [1] ¶¶ 37–38. Jingyao says it has calibrated its meters that way since 2006. [1] ¶ 38. When the meter is switched on, its firmware does not take a set of initial readings and average them. [1] ¶¶ 36, 39. Instead, for each measurement during ordinary use, the firmware takes three readings and uses the middle one—the median. [1] ¶ 36.

Luster Leaf submitted a complaint to Amazon asserting that Jingyao's meter infringed the '361 patent. [1] ¶ 30; [16] at 4 ¶ 30. Amazon removed the listing that day, [1] ¶ 30, and warned Jingyao that its seller account could be suspended if the violation was not resolved. [14-1] at 2. Jingyao appealed through Amazon's internal process without success. [1] ¶ 34. Amazon told Jingyao that to reinstate the listing it needed a court order or a retraction submitted by Luster Leaf. [14-3] at 3. Jingyao emailed Luster Leaf, demanding that it withdraw the complaint within 48 hours. [1] ¶ 31. Luster Leaf did not respond. [1] ¶ 32. The listing remains down, [1] ¶ 34, and 1,956 of Jingyao's meters sit unsold in Amazon's warehouses, [14] ¶ 18.

Jingyao filed this suit, seeking declarations that its meter does not infringe the '361 patent and that the patent's independent claims are invalid as obvious and, for Claim 16, for lack of an adequate written description. [1] ¶¶ 61–68. It moved for a temporary restraining order and preliminary injunction three weeks later. [11]; [13].

Luster Leaf answered and counterclaimed for infringement, [16] at 9–15, and Jingyao moved to dismiss the counterclaim. [18]. While the motions were being briefed, the parties began exchanging the disclosures required by the Local Patent Rules: Jingyao produced its firmware source code, and Luster Leaf served its initial infringement contentions. [28] at 3; [28-1].

## III. Analysis

### A. Preliminary Injunction

Jingyao asks for an order directing a patent holder to retract its statement that the patent is being infringed and forbidding the patent holder from making that statement again to Amazon or any other online marketplace. [13] at 24–25. That is "an injunction against communication." *GP Indus.*, 500 F.3d at 1373–74. "One has a right to inform others of his or her patent rights," and so "an injunction against communication is strong medicine that must be used with care and only in exceptional circumstances." *Id.* at 1374.

To obtain the injunction it seeks, Jingyao must show not only a likelihood of success on the merits, but also that Luster Leaf asserted infringement in bad faith, and that showing "must be supported by a finding that the claims asserted were objectively baseless." *Myco*, 955 F.3d at 10. An infringement assertion is objectively baseless only if "no reasonable litigant could realistically expect success on the merits." *GP Indus.*, 500 F.3d at 1374 (quoting *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)). The bar is high by design. "An incorrect allegation of patent infringement is not necessarily objectively baseless," because "a patentee, acting in good faith on its belief as to the nature and scope of its rights, is

fully permitted to press those rights 'even though he may misconceive what those rights are.'" *Lite-Netics, LLC v. Nu Tsai Cap. LLC*, 60 F.4th 1335, 1344 (Fed. Cir. 2023) (quoting *Mikohn*, 165 F.3d at 897).

Luster Leaf's response does not use the words "bad faith" or "objectively baseless," and Jingyao treats the omission as a concession. [28] at 2, 10. But the burden is Jingyao's, and Luster Leaf's response argues that Jingyao's meter infringes Claim 16 and that the patent is valid. [21] at 9–17. An argument that an infringement assertion is correct is an argument that it has a basis.

At a minimum, Luster Leaf's position on Claim 17 is not objectively baseless. Claim 16 calls for a "calibration circuit adapted to set a zero reference associated with a neutral value of the soil characteristic to a fixed reference voltage from the sensor circuit," and Claim 17 specifies that the circuit "includes a variable resistor" and "is connected between the sensor circuit and the microcontroller." [16-1] at 10:64–11:14. The specification describes that arrangement as the fixed calibration method: a variable resistor, connected between the sensor and the microcontroller, that "may be adjusted at the factory to associate the zero reference of the measured soil characteristic (i.e., pH) with a fixed sensor output voltage." [16-1] at 8:36–54. Jingyao's own account of its meter is that variable resistors on the circuit board are adjusted at the factory until the meter reads a pH of 7.0 and are then left alone. [1] ¶¶ 37–38. The sensor's signal "is biased and conditioned by the passive potentiometer network before reaching the microcontroller's ADC input." [1] ¶ 36. On its face, Claim

17 covers a zero-reference preset in that way. *See* [21] at 9–10 (arguing that Jingyao's factory-adjusted variable resistor is the claimed calibration circuit).

The crux of the parties' dispute lies in the patent's use of the term "averaging." Claim 16 requires "averaging initial analog readings," and Claim 17 carries that requirement with it. [16-1] at 10:64–11:14. For each measurement, Jingyao's firmware takes three readings and uses the middle one. [1] ¶ 36. That practice, Luster Leaf contends, "is the same as averaging." [28-1] at 2 (infringement contentions as to Claim 1). To Jingyao, "averaging" means "computing the arithmetic mean of a set of values," and choosing a median is a different operation. [1] ¶ 18; [28] at 3–4.

A mean and a median are both ways of reducing a set of readings to one representative value, and the claims say "averaging," not "calculating the mean." The specification does not define "averaging" or say how the average is to be computed; it says only that the microcontroller "can average these initial analog readings to derive a nominal value." [16-1] at 4:45–47. Ordinary usage points in both directions. One dictionary defines the noun "average" as "a single value (such as a mean, mode, or median) that summarizes or represents the general significance of a set of unequal values," and the verb as "to find the arithmetic mean of." *Average*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/average [https://perma.cc/74M6-DP43]. Which sense a person skilled in the art would give the claim term is a question for claim construction, which the parties have not briefed. A reasonable litigant could expect to prevail on the reading that includes taking a median as averaging.

Jingyao's invalidity theories do not make Luster Leaf's infringement assertion baseless either. A patent is "presumed valid," 35 U.S.C. § 282(a), and an invalidity defense must be proven by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Jingyao's obviousness argument relies on a reference published in July 2010, which counts as prior art only if Luster Leaf's December 2009 provisional application fails to support the averaging limitation. [1] ¶¶ 47, 50, 56. The provisional application says that when the meter is switched on it "does a very fast series of reads to set the neutral value," and that readings are "averaged with the previous display value" to steady the display. [1] ¶¶ 51–52; [16] at 7 ¶¶ 51–52. Whether a person skilled in the art would understand those passages to disclose averaging the initial reads "is a question of fact," *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc), that the present record does not answer. [1] ¶¶ 53–55; [16] at 7 ¶¶ 53–55.

Having decided that Claim 16 suffices to establish a good faith basis, I do not reach whether the assertion of Claim 1 clears the bar. Jingyao seeks an injunction against asserting the '361 patent at all, [13] at 24–25, and an assertion that has a reasonable basis as to one claim is not made baseless by a weaker position on another. *Cf. Lite-Netics*, 60 F.4th at 1344 (vacating injunction after concluding that allegations under one of two asserted patents were not objectively baseless).

Jingyao's remaining points go to Luster Leaf's state of mind. Luster Leaf did not have the firmware when it complained to Amazon, and it ignored Jingyao's demand letter. [28] at 10–11; [1] ¶¶ 31–33. But "[s]ubjective considerations of bad

faith are irrelevant if the assertions are not objectively baseless." *GP Indus.*, 500 F.3d at 1375.

Claim construction has not begun, the infringement and validity questions both turn on it, and I cannot say that no reasonable litigant in Luster Leaf's position could expect to succeed. *See, e.g.*, *Lite-Netics*, 60 F.4th at 1345 (vacating injunction where patent holder's positions had "not been shown, at this stage of the litigation (before, e.g., full claim-construction proceedings or possible expert reports on infringement), to be objectively baseless"); *GP Indus.*, 500 F.3d at 1375 (reversing injunction because, "[b]y recognizing that the patent is not necessarily invalid and that the court could not conclude that there was no infringement, the court established that [the patentee's] assertions were not objectively baseless"). Because Jingyao has not shown objective baselessness, I do not decide whether it is likely to succeed on its claims for declaratory relief, and I do not reach irreparable harm, the balance of equities, the public interest, or bond.

### B. Motion to Dismiss the Counterclaim

Luster Leaf's counterclaim is thinly pleaded. It identifies the '361 patent and attaches a copy, reproduces Claims 1 and 16, identifies the accused meter by its Amazon listing, and alleges that Jingyao makes, imports, and sells that meter and so infringes the patent "either literally and/or under the doctrine of equivalents." [16] at 10–12 ¶¶ 6–15, 21. It does not say how the meter meets any limitation of any claim. That, Jingyao argues, is the pleading the Federal Circuit held insufficient in *Bot M8 LLC v. Sony Corp. of America*, 4 F.4th 1342 (Fed. Cir. 2021). [18] at 4–6.

"[A] plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8*, 4 F.4th at 1353. But "[a] plaintiff is not required to plead infringement on an element-by-element basis," and "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* at 1352–53. "[I]t is enough 'that a complaint place the alleged infringer on notice of what activity is being accused of infringement.'" *Id.* at 1352 (quoting *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)) (cleaned up).

The counterclaim answers a complaint in which Jingyao put this patent and this product at issue, and marked the sensor circuit, analog-to-digital converter, microcontroller, and display limitations as "[n]ot disputed." [1] ¶¶ 36–39. That leaves the calibration limitations. As to those, the pleadings describe a meter with variable resistors that are adjusted at the factory to set the pH reference, and firmware that takes several readings and uses the median. [1] ¶¶ 36–38. Whether those features meet the calibration limitations—including whether taking a median is "averaging"—depends on what the limitations mean, which is "a dispute not suitable for resolution on a motion to dismiss." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018).

Plausibility is judged in context, and the function of a pleading is notice. Jingyao cannot be in doubt about "what activity is being accused of infringement" when it sued first to have that activity declared noninfringing. And its complaint does more than assert noninfringement. It alleges facts about how its meter works, and those facts are consistent with infringement under Luster Leaf's reading of the claims. *See supra* Section III.A. The parties' disagreement is over the legal conclusion to be drawn from facts that Jingyao supplied.

Dismissal would also accomplish nothing because the counterclaim is compulsory. *See Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003) ("Rule 13(a) makes an infringement counterclaim to a declaratory judgment action for noninfringement compulsory."). The question it raises stays in the case whether the counterclaim does or not, because Jingyao seeks a declaration of noninfringement on which Luster Leaf carries the burden. *See Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 198 (2014) (in a licensee's declaratory-judgment action, "the burden of persuasion is with the patentee, just as it would be had the patentee brought an infringement suit"). Jingyao does not seek dismissal with prejudice; it asks that Luster Leaf be made to replead with a chart or other facts tying the accused meter to the averaging limitations. [18] at 10; [29] at 8. The Local Patent Rules already require "a chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality," N.D. Ill. Local Patent R. 2.2(c), and Luster Leaf has served one. [28-1]. Requiring Luster Leaf to copy its contentions into an amended pleading would

add a step to the case without adding information. The counterclaim is thin, but it states a claim for infringement of the ’361 patent.

Jingyao’s remaining arguments are aimed at parts of the counterclaim: its assertion that Jingyao infringes “all claims” of the patent, its invocation of the doctrine of equivalents, its prayer for an injunction against inducing and contributing to infringement, and its allegation of willfulness. [18] at 6–9. “A motion to dismiss under Rule 12(b)(6) doesn’t permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.” *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original). Luster Leaf has one claim: that Jingyao infringes the ’361 patent. Literal infringement and infringement by equivalents are two ways of proving it. Which of the patent’s 21 claims the meter infringes is a matter for contentions and proof. And willfulness is not a claim at all but the predicate for treble damages. 35 U.S.C. § 284. Because the infringement claim survives, I do not look further at this stage.

## IV. Conclusion

Jingyao's motion for a preliminary injunction, [11], and motion to dismiss Luster Leaf's counterclaim, [18], are denied. Jingyao shall answer the counterclaim by 12/8/26. The case schedule otherwise remains as set. The parties' next discovery progress report is due 12/9/26.

ENTER:

Manish S. Shah
United States District Judge

Date: November 17, 2026